NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2485

_____

TOMAS CANAS MEJIA,
                                        Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

_____

On Petition for Review of an
Administrative Order of Removal
of the Department of Homeland Security
(A098-358-380)
Immigration Judge: Mirlande Tadal

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 25, 2021

_____

Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*.

(Opinion Filed: May 5, 2021)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Tomas Canas Mejia petitions for review of a decision of an Immigration Judge ("IJ") concluding that he was not entitled to relief from reinstatement of a prior order of removal. The IJ concurred with the asylum officer's conclusion that Mejia had neither a reasonable fear of persecution based on his race, religion, nationality, political opinion, or membership in a particular social group—as required for withholding of removal—nor a reasonable fear of torture, as required for relief under the Convention Against Torture ("CAT"). Finding that substantial evidence supports the IJ's decision and that this Court lacks jurisdiction to review the unexhausted particular social group before the IJ, we will deny in part and dismiss in part the petition for review.

## I. Background

Mejia, a native and citizen of Guatemala, first entered the United States in September 2004. He was ordered removed from the United States on April 15, 2005, and pursuant to that order was removed to Guatemala on June 13, 2008. Mejia subsequently reentered the United States in December 2008, and has lived in the United States continuously since 2008. On February 3, 2020, the Department of Homeland Security issued Mejia a "Notice of Intent/Decision to Reinstate Prior Order."

While in detention, Mejia expressed a fear of returning to Guatemala. As a result, he was referred to an asylum officer for a reasonable fear interview. 8 C.F.R. § 208.31(b).

2

Mejia told the asylum officer that, upon his return to Guatemala in 2008, he received an unsigned letter at his parents' house asking for money. He also stated that he received phone calls asking for money. These requests were accompanied with threats against Mejia and his family. Mejia believed the letters and phone calls were being made by the gang MS-18, who assumed that Mejia had money, given that he had returned from the United States.

## II. Discussion

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020). We review an IJ's factual findings in reasonable fear proceedings for substantial evidence. *Id.* at 342. This is an "extraordinarily deferential standard," where we uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 340 (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)). "When we review for substantial evidence, 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009)). We review the IJ's legal conclusions, such as whether a proffered particular social group is cognizable, de novo. *See S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 542 (3d Cir. 2018).

Before us, Mejia argues that the IJ erred in affirming the asylum officer's determination that Mejia did not have a reasonable fear of returning to his country, despite finding him credible, because (1) the IJ improperly found that the petitioner does

3

not belong to a cognizable social group and (2) the IJ abused her discretion and improperly found that the petitioner's fear did not rise to the level of persecution. These arguments have no merit.

In a reasonable fear interview, an asylum officer determines whether the alien has demonstrated a "reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. § 208.31(c). If the asylum officer finds that the alien has not established a reasonable possibility of persecution or torture, an alien may appeal the asylum officer's determination to an IJ. 8 C.F.R. § 208.31(f)–(g).

Before the IJ, Mejia proposed only *one* particular social group. Mejia's counsel presented the particular social group as "individuals that are coming back from the United States, which the Mara Salvatrucha gang has imputed they have financial means to be extorted." A.R. 38. The IJ confirmed her understanding that only one particular social group was under consideration.

Now Mejia argues before us that he presented *two* particular social groups before the IJ. This second proposed social group, individuals who defied the MS-18 gang and escaped their grasp was not presented to the IJ, nor did Mejia correct the IJ's purported omission when she gave her decision.

Our jurisdiction is constrained by the requirement of exhaustion of administrative remedies. A "court may review a final order of removal only if . . . the alien has

exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Thus, a petitioner must "raise and exhaust his . . . remedies as to each claim or ground for relief if he . . . is to preserve the right of judicial review of that claim." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594–95 (3d Cir. 2003). Because Mejia did not present this second particular social group—individuals who defied the MS-18 gang and escaped their grasp—before the IJ, we lack jurisdiction to review it.

Accordingly, we have jurisdiction to review only the IJ's determination with respect to the proposed particular social group Mejia presented before the IJ— "individuals that are coming back from the United States, which the Mara Salvatrucha gang has imputed they have financial means to be extorted." A.R. 38. The IJ did not err in rejecting this social group. The particular social group composed of individuals who returned from the United States who are perceived to be wealthy is not cognizable. *See, e.g., Khan v. Att'y Gen.*, 691 F.3d 488, 498 (3d Cir. 2012) (rejecting as "too amorphous" a proposed social group of "secularized and westernized Pakistanis perceived to be affiliated with the United States"); *Beltrand-Alas v. Holder*, 689 F.3d 90, 94 (1st Cir. 2012) (neither wealth alone nor perceived wealth upon returning from the United States can form the basis for a cognizable social group).

Additionally, Mejia contends he is entitled to CAT relief. To be eligible for protection under CAT, an applicant is required to establish that the claimed torture would occur "by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

5

"Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 181 (3d Cir. 2020). Where the government may not have "actual knowledge" of the torture, an applicant "may meet this standard by showing that the government is willfully blind to it." *Id.*

The IJ determined that there was no evidence that Guatemala would acquiesce to any anticipated torture. Before the IJ, Mejia stated that he had received numerous telephone calls and a threatening letter from individuals whom he believed were gang members or affiliated with a gang. Mejia contends that it is clear both by his own testimony as well as the actual conditions with respect to gangs in Guatemala, and especially the MS-18 gang, that the government has acquiesced to the activities of MS-18. Moreover, Mejia claims, the government is likely to do so again, that is, be willfully blind to the plight of individuals such as he. However, Mejia does not present any evidence to support this assertion. Accordingly, substantial evidence supports the IJ's determination that Mejia failed to show a reasonable possibility that he could establish eligibility for protection under CAT.

### III. Conclusion

For the foregoing reasons, we will deny in part and dismiss in part the petition for review.

6